UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | | |
|---|---|---|---|
| RODNEY BATES, | ) | | |
| | ) | | |
| *Petitioner*, | ) | Case Nos. | 1:06-cr-69-TRM-SKL |
| | ) | | 1:13-cv-316-TRM |
| v. | ) | | |
| | ) | | |
| UNITED STATES OF AMERICA, | ) | | |
| | ) | | |
| *Respondent*. | ) | | |
| | ) | | |

## MEMORANDUM AND ORDER

Petitioner Rodney Bates ("Petitioner"), a federal prisoner acting pro se, filed a timely "protective" motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (Doc. 379) and an amended motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (Doc. 383) (the "2255 Motion").[1] Respondent United States of America (the "Government") filed a response in opposition to the 2255 Motion (Doc. 386). Petitioner filed a reply (Doc. 392), and this matter is now ripe. For the reasons stated below, Petitioner's 2255 Motion is **DENIED**.

## I. BACKGROUND

Petitioner, along with 11 co-defendants in a 14-count Indictment, was charged with conspiring to distribute five kilograms or more of cocaine hydrochloride, fifty grams or more of cocaine base ("crack"), and 100 kilograms or more of marijuana in violation of 21 U.S.C. §§ 846

---

[1] All citations to the district court record are to the underlying criminal case. Petitioner originally filed a § 2255 motion alleging six grounds for relief (Doc. 379). He later filed a lengthy motion to amend (Doc. 383), which is better characterized as a memorandum in support of Petitioner's claims set forth in the original motion. The motion to amend was granted. (Doc. 385.)

and 841(a)(1), (b)(1)(A) (Count One) and three counts of distributing cocaine in violation of 21 U.S.C. § 841 (Counts Two, Three and Four). A jury found Petitioner guilty as charged.

As pertinent, prior to trial Petitioner unsuccessfully moved to suppress evidence obtained through two Title III wiretap authorization orders issued by this Court. (Doc. 249.) After his conviction, Petitioner was sentenced to an aggregate 420-month term of imprisonment, a sentence within the applicable range for a career offender under the United States Sentencing Commission Guidelines Manual ("USSG" or "Guidelines").[2] The Sixth Circuit rejected all of Petitioner's claims on direct appeal[3] and Petitioner did not seek a writ of certiorari. It is not necessary to delve into an extensive discussion of the background facts and district court proceedings as they were summarized in the Court's prior orders, in the Presentence Investigation Report ("PSR"), and by the Court of Appeals for the Sixth Circuit ("Sixth Circuit") on direct appeal, *United States v. Bates*, No. 09-5155 (6th Cir. June 14, 2012) [Doc. 356], all of which are incorporated herein.

## II. STANDARDS

A prisoner in federal custody may file a motion to vacate, set aside, or correct a sentence pursuant to 28 U.S.C. § 2255 "claiming the right to be released upon the ground that the sentence

---

[2] Using the 2008 version of the Guidelines, the PSR referenced the jury verdict in finding Petitioner responsible for at least five kilograms of cocaine hydrochloride for a base offense level of 32. (PSR at ¶¶ 26, 28.) Because Petitioner had at least two prior felony convictions for crimes of violence or drug trafficking, he was a career offender pursuant to USSG § 4B1.1, with an offense level of 37. (*Id.* at ¶ 36.) With his career-offender classification, Petitioner had a criminal history category of VI, and a corresponding Guidelines sentencing range of 360 months to life imprisonment (*Id.* at ¶¶ 59, 78).

[3] On direct appeal, Petitioner unsuccessfully argued the district court erred by: (1) admitting the cocaine from three recorded drug transactions with a confidential informant ("CI"); (2) allowing the jury to view transcripts of recorded telephone conversations and allowing witnesses from those phone calls to testify with respect to the substance of those conversations; (3) denying the motion to suppress; and (4) imposing an unreasonable term of imprisonment. (*See* Docs. 308, 356 (Sixth Circuit Op. Affirming).)

was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Relief under § 2255 is limited, however, to: (1) errors involving lack of jurisdiction; (2) constitutional violations; and (3) those non-constitutional errors that constitute "fundamental defect[s] which inherently result[] in a complete miscarriage of justice." *Reed v. Farley*, 512 U.S. 339, 348-49 (1994) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)).

Rule 4(b) of the Rules Governing Section 2255 Proceedings in the United States District Courts requires a district court to summarily dismiss a § 2255 motion if "it plainly appears from the face of the motion, the attached exhibits, and the record of the prior proceedings that the movant is not entitled to relief." *See also Pettigrew v. United States*, 480 F.2d 681, 684 (6th Cir. 1973) ("A motion to vacate sentence under § 2255 can be denied for the reason that it states "only bald legal conclusions with no supporting factual allegations.") (quoting *Sanders v. United States*, 373 U.S. 1, 19 (1963)). If the motion is not summarily dismissed under Rule 4(b), Rule 8 requires the court to determine, after a review of the answer and the records of the case, whether an evidentiary hearing is required.

### III.     ANALYSIS

Petitioner's main claim appears to be that his trial counsel was ineffective for allegedly: (1) not "mak[ing] known all the material misrepresentations and omissions in the first wiretap application; (2) not seeking to compel "production and/or in camera inspection" of the government's sources and cooperating witnesses before litigating the motion to suppress; (3) not objecting to the drug quantity attributed to Petitioner in the PSR; and (4) not timely disclosing a plea offer. Petitioner also alleges ineffectiveness of appellate counsel because appellate counsel

did not litigate the foregoing issues on direct appeal. In addition, Petitioner seeks relief under *Alleyne v. United States*, 133 S. Ct. 2151 (2013).[4]

### A. Ineffective Assistance of Counsel

Ineffective assistance of counsel is a recognized constitutional violation that, when adequately shown, warrants relief under § 2255. The two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), governs claims of ineffective assistance of counsel raised pursuant to 28 U.S.C. § 2255. *Huff v. United States*, 734 F.3d 600, 606 (6th Cir. 2013). To demonstrate a violation of the Sixth Amendment right to effective assistance of counsel, "a defendant must establish that his attorney's performance was deficient and that the deficient performance prejudiced the defense." *Id.* (citing *Strickland*, 466 U.S. at 687).

The first prong requires a petitioner to show his attorney's performance was deficient by demonstrating that counsel's "representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. Stated another way, the petitioner must show "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. The Supreme Court "has declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that the proper measure of attorney performance remains simply reasonableness under prevailing professional norms."

---

[4] To the extent Petitioner is attempting to state a stand-alone claim of constitutional error that he failed to raise in his direct appeal or restate a claim that he raised unsuccessfully in his direct appeal, any such challenge has been procedurally defaulted. *See Bousley v. United States*, 523 U.S. 614, 621 (1998); *Regalado v. United States,* 334 F.3d 520, 528 (6th Cir. 2003); *Jones v. United States*, 178 F.3d 790, 796 (6th Cir. 1999); *DuPont v. United States*, 76 F.3d 108, 110 (6th Cir. 1996). If Petitioner were attempting to litigate or relitigate his Fourth Amendment claims, such claims would not ordinarily be cognizable on collateral review. *See United States v. Johnson*, 457 U.S. 537, 562 (1982). However, because Petitioner argues his counsel was constitutionally ineffective in discovering and presenting the Fourth Amendment claims in his motion to suppress, these arguments will be addressed as appropriate.

4

*Huff*, 734 F.3d at 606 (alterations in original) (quoting *Wiggins v. Smith*, 539 U.S. 510, 521 (2003)). A reviewing court must be "highly deferential" to counsel's performance, because

> [a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound . . . strategy."

*Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

Even if a petitioner is successful in overcoming that presumption, he must still satisfy the second prong of the *Strickland* test, prejudice. *Id.* at 687. Thus, a petitioner must show not only that his counsel's representation was objectively unreasonable, but also that he was prejudiced by counsel's deficiency because there exists "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *McPhearson v. United States*, 675 F.3d 553, 563 (6th Cir. 2012) (quoting *Strickland*, 466 U.S. at 694).

Although *Strickland* emphasized that both prongs must be established in order for a petitioner to meet his burden, it also held that there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry. *Strickland*, 466 U.S. at 697. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id.*

### B. Claims of Ineffectiveness by Trial Counsel

#### 1. Motion-to-Suppress Issues

Petitioner argues his trial counsel was ineffective in pursuing the suppression of all wiretap evidence for two interrelated reasons: first, because counsel failed to make known all

5

the alleged material misrepresentations and omissions in the first wiretap application; and second, because counsel failed to seek to compel identification of the government's sources and cooperating witnesses in conjunction with the motion to suppress. The government disputes both of these claims.

"[T]hough free-standing Fourth Amendment claims cannot be raised in collateral proceedings under either § 2254 or § 2255, the merits of a Fourth Amendment claim still must be assessed when a claim of ineffective assistance of counsel is founded on incompetent representation with respect to a Fourth Amendment issue." *Ray v. United States*, 721 F.3d 758, 762 (6th Cir. 2013) (citing *Kimmelman v. Morrison*, 477 U.S. 365, 382-83 (1986)). "Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." *Kimmelman*, 477 U.S. at 375.

To develop its case against Petitioner and his 11 co-defendants, law enforcement agents conducted a joint investigation into a drug-trafficking organization using several different confidential informants ("CIs" or "CI" when singular) to provide information and to purchase drugs from Petitioner and others. (PSR at ¶ 19.) A CI purchased cocaine from Petitioner in three recorded transactions. (*Id.* at ¶ 21.) Agents used the information gathered from operations to establish probable cause to obtain Title III wiretaps to intercept telephone conversations of Petitioner and co-defendants. (Docs. 254, 257.)

Petitioner's arguments regarding ineffective counsel with respect to the Fourth Amendment and CI claims center upon the affidavit supporting the first wiretap. Prior to trial,

6

Petitioner filed a motion to suppress that alleged the initial Title III wiretap application contained false information which was essential to establishing probable cause to authorize the first intercept. (Docs. 249 & 356.) Petitioner argued the second wiretap was based on conversations obtained from the first wiretap and was, therefore, the fruit of an illegal wiretap. In response, the government acknowledged that the affidavit contained false information provided by CS4 to the affiant. However, Petitioner acknowledged in his motion to suppress that "the misrepresentations were not knowingly or intentionally made by the affiant," and that he was not entitled to a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978) as a result. (Doc. 249-1 at Page ID # 215.) On direct appeal, the Sixth Circuit affirmed that this Court had properly found Petitioner did not contend that the affiant deliberately or recklessly included false information in his affidavit. (Doc. 356 at Page ID # 1102.)[5] As a result, the Sixth Circuit held that the evidence from, and fruits of, the wiretaps were not excludable and that this Court did not err in denying Petitioner's motion to suppress. (*Id*.)

Petitioner now alleges counsel failed to identify or object to other material misrepresentations and omissions in the first wiretap application, particularly with regard to the information provided by persons identified in the affidavit as CS2, CS3[6], and CS4. Among

---

[5] The Court found: "It is undisputed CS4 provided false information regarding [Petitioner] to agents. The United States admits it now believes CS4 did not obtain cocaine, or purported cocaine, from [Petitioner] on either May 9 or August 18 as referenced in [Affiant's] affidavit. The United States has confirmed CS4 will not be called as a government witness in this matter, and asserts its agents, including [Affiant], had no knowledge the information provided by CS4 was false at the time the wiretaps orders were administered." (Doc. 259 at Page ID # 300 (adopted Doc. 262 at Page ID # 316).)

[6] On August 6, 2014, Petitioner filed a "Motion to Supplement the Record as Exhibit 2, to Include the Case Disposition of Alfred Webb-Wells." (Doc. 407.) The motion to supplement was filed in the record of this case on August 6, 2014, and in Petitioner's individual case on May 25, 2016. The Court has fully considered Petitioner's claims concerning ineffective assistance of counsel regarding alleged intentional misrepresentations contained in the affidavits supporting the wiretaps

many falsehoods Petitioner now alleges, Petitioner claims the affiant failed to reveal that co-defendant and conspiracy participant Fitzgerald Bibbins was, at least, both CS2 and CS3. Relying on *United States v. Mares-Martinez*, 240 F. Supp. 2d 803 (N.D. Ill. 2002), Petitioner claims he is entitled to a hearing to determine this issue.

Contrary to Petitioner's claims, the affidavit contained sufficient information to inform the Court that CS2 was a government informant. (Doc. 254 at Page ID # 253 (stating CS2 "has provided accurate, truthful, detailed and reliable [information] to agents of the FBI and DEA since August 2003 and is still providing information to [] them.").) Furthermore, *Mares-Martinez* is not binding, does not involve a § 2255 claim, and does not support Petitioner's argument. Instead, *Mares-Martinez* involved a request for a *Franks* hearing to challenge the "necessity" requirement for a wiretap where the government allegedly failed to disclose that one of the alleged participants in the conspiracy was actually a confidential government informant and the government allegedly had misrepresented its necessity showing by claiming there were no confidential informants in its wiretap application. No issue concerning the necessity requirement for a Title III wiretap has been raised in this case.

The probable cause for issuance of the initial wiretap in this case was plentiful. Similar information came from multiple sources. Petitioner has presented no credible evidence that the affiant misrepresented the true nature or identities of the CIs when seeking authorization for a wiretap. And, even if the allegedly false information from CS2-CS3 had been excised, the remaining information was adequate to establish probable cause to intercept communications. In short, Petitioner has failed to establish that his Fourth Amendment claim is meritorious.

---

and the motion to supplement (Doc. 407) is **GRANTED** to the extent it seeks to supplement the record but **DENIED** to the extent Petitioner claims it entitles him to § 2255 relief.

8

Even if Petitioner could establish that his Fourth Amendment claim has merit, Petitioner cannot establish actual prejudice. Petitioner's claim that his attorney failed to discover or present additional arguments regarding the affiant allegedly misrepresenting or omitting facts from his affidavit in support of the wiretap application fails because even if information from CS2 and CS3 is excised from the affidavit, there is ample probable cause for the wiretap. *See Kimmelman*, 477 U.S. at 375 (holding that to obtain relief, a petitioner must establish that his Fourth Amendment claim is meritorious and that there "is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice.").

Petitioner's other complaints, including his claim that the affidavit has 18 intentional misrepresentations his attorney did not discover or adequately address also fail. As argued by the government, Petitioner complains about discrepancies between the affidavit authored in 2005 and the affiant's testimony before the grand jury in 2006 and at trial in 2008. These alleged discrepancies, however, do not support a claim that counsel was ineffective with respect to the motion to suppress filed before the trial testimony took place and before any grand jury testimony was required to be revealed to Petitioner.

Petitioner faults counsel for not seeking disclosure of the identities of CS2, CS3, and CS4 (or at least seeking *in camera* review of that information).[7] Petitioner alleges disclosure of the informants' identities could have helped him with respect to his motion to suppress by demonstrating he was framed by the government. First, the evidence of Petitioner's guilt is

---

[7] Petitioner's claims about CS4 are confusing as he specifically told the Court prior to opening statements that he knew the identity of CS4 and did not want that person subpoenaed to trial. (Doc. 345 at Page ID # 969-70.) This is, however, just one example of the many perplexing positions asserted by Petitioner throughout his proceedings.

9

overwhelming and in no way indicates he was framed. By way of example only, five of Petitioner's co-conspirators who pleaded guilty and cooperated testified that they had engaged in various drug-related transactions with Petitioner.

Second, the government has a privilege "to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law." *United States v. Sales*, 247 F. App'x 730, 734 (6th Cir. 2007) (quoting *Roviaro v. United States*, 353 U.S. 53, 59 (1957)).[8] Admittedly, the privilege is limited by the requirement that criminal trials be fundamentally fair. *Roviaro*, 353 U.S. at 60-61. In other words, the privilege must yield when the informant's identity is "relevant and helpful to the defense of an accused" or "essential to a fair determination of a cause." *Id.* at 60-61. This determination is subject to a case-by-case balancing of "the public interest in protecting the flow of information against the individual's right to prepare his defense." *Id.* at 62. However, in performing this balancing, the court should consider among other factors the charges, the potential defenses, and the significance of the informer's testimony. *Id.*; *see also United States v. Dexta*, 136 F. App'x 895, 904 (6th Cir. 2005). The Sixth Circuit has held that danger to the life of the informant is entitled to significant weight in the balance. *United States v. Jackson*, 990 F.2d 251, 255 (6th Cir. 1993).

---

[8] In *Roviaro*, the Supreme Court held:

> What is usually referred to as the informer's privilege is in reality the Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law. The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement. The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation.

353 U.S. 53, 59 (1957) (citations omitted).

It is a defendant's burden to show how disclosure of the confidential informant's identity would substantively assist his defense. *Dexta*, 136 F. App'x at 904. "Mere conjecture or supposition about the possible relevancy of the informant's testimony is insufficient to warrant disclosure." *Id.* (quoting *United States v. Sharp*, 778 F.2d 1182, 1187 (6th Cir. 1985)); *Emmons v. McLaughlin*, 874 F.2d 351, 358 (6th Cir. 1989) ("Mere speculation as to the usefulness of the informant's testimony is insufficient to justify disclosure of his identity."). The identity of a confidential informant must be disclosed only where the defendant shows "disclosure is essential to a fair trial." *Dexta*, 136 F. App'x at 904 (quoting *United States v. Moore*, 954 F.2d 379, 381 (6th Cir. 1992)).

Petitioner has not met his burden to demonstrate his counsel was ineffective in not seeking disclosure of the CIs' identities and information for purposes of the motion to suppress. Had counsel done so, his efforts would have surely failed. Petitioner has not identified any legal authority that supports his claim that disclosure of the identities of the CIs was required at the motion to suppress stage in the hopes they would contradict information in the affidavit supporting the wiretap application. Petitioner also has not identified any legal basis upon which counsel could have obtained the desired information prior to the resolution of his pretrial motion to suppress, which was determined on the four corners of the affidavit.

In short, Petitioner has not met his burden to establish that he is entitled to relief under 28 U.S.C. § 2255 with respect to any of his claims about his counsel's performance in connection with the motion to suppress and alleged Fourth Amendment issues. *See McQueen v. United States*, 58 F. App'x 73, 76 (6th Cir. 2003) (per curiam) ("Defendants seeking to set aside their sentences pursuant to 28 U.S.C. § 2255 have the burden of sustaining their contentions by a preponderance of the evidence.").

11

### 2. Drug Quantity

On direct appeal, Petitioner contended his sentence of imprisonment was unreasonable and improperly enhanced. In rejecting these arguments, the Sixth Circuit held that Petitioner did not specifically contest the procedural reasonableness of his sentence; instead, he objected to the PSR in its entirety in an attempt to preserve all issues that might arise from his sentence. Because the Sixth Circuit found this was an inadequate objection, it conducted a plain error review, found no error and held Petitioner's sentence was procedurally reasonable. Petitioner now argues his attorney was ineffective because he failed to specifically object to the drug quantity attributed to Petitioner in the PSR.

This claims fails, because the drug quantity applied in the PSR was found by the jury when they found Petitioner guilty of conspiring to distribute "five kilograms or more of a mixture or substance containing cocaine hydrochloride" and "a detectable amount of marijuana." (Doc. 288 at Page ID # 393.) As noted in the PSR, regardless of the quantity of marijuana, five kilograms of cocaine hydrochloride required a base offense level of 32 under the applicable Guidelines. (PSR at ¶¶ 22, 26, 28.) Because the drug quantity attributed to Petitioner resulted from the jury's verdict, there was no legitimate basis to object to it, as argued by the government. As there was no legitimate basis for an objection, counsel was not ineffective for failing to specifically object to the drug quantity attributed to Petitioner in the PSR. *E.g.*, *Hoffner v. Bradshaw*, 622 F.3d 487, 499 (6th Cir. 2010) (holding counsel is not constitutionally ineffective for not pursing meritless claims); *Bradley v. Birkett*, 192 F. App'x 468, 475 (6th Cir. 2006) (holding an attorney is not ineffective for failing to raise a meritless objection).

### 3. Failure to Communicate Plea Offer

As explained in *Missouri v. Frye*, 132 S. Ct. 1399, 1405 (2012) and *Lafler v. Cooper*, 132 S. Ct. 1376, 1384 (2012), "the right to counsel applies in post-indictment plea negotiations even if the negotiations have no effect on the fairness of a conviction." *Kennedy v. United States*, 756 F.3d 492, 493 (6th Cir. 2014). Here, Petitioner has not demonstrated that he did not have effective assistance of counsel under the reasoning of *Frye* and *Cooper*.

Petitioner claims counsel did not disclose the government's plea offer until "after the fact," (Doc. 379, Page ID # 1219) and that if Petitioner had known about the offer in a timely manner, he would have accepted it and, thus, received a lower sentence. The government represents that it prepared a draft plea agreement on September 16, 2008, offering to dismiss the distribution counts if Petitioner pleaded guilty to violating 21 U.S.C. § 846 and 841(a)(1), (b)(1)(C), a lesser-included offense of the charged conspiracy. The government also represents the plea offer did not include a guaranteed sentence and the Court would have been authorized to impose any sentence up to the statutory maximum of twenty years' imprisonment.

In his reply, Petitioner admits his attorney informed him of the government's September 16, 2008 plea offer by sending him a letter but he complains he did not receive the letter by mail until four days later on September 20, 2008. (Doc. 392, Page ID # 1369-70.) This time frame appears entirely reasonable as opening statements were not made until September 29, 2008 (Doc. 344). Petitioner had adequate time to consider the plea offer.

Petitioner claims in his reply that the government's offer had lapsed by the time he got counsel's letter on September 20, but he fails to explain this claim or support it with any proof. Had Petitioner desired to plead guilty pursuant to the offered plea agreement, he had plenty of time to do so between September 20 and September 29. Petitioner apparently instead rejected

13

the proposed agreement and, in a letter to his counsel dated September 26, 2008, and filed with the Court on September 30, Petitioner even complained that counsel was working for the prosecution by encouraging him to enter a guilty plea. (Doc. 284, at Page ID # 388.)

Moreover, Petitioner engaged in a long colloquy with the Court about his several complaints about his attorney prior to opening statements on September 29 and not once did he mention any dissatisfaction with the timing of his receipt of the government's plea offer. (Doc. 345 at Page ID # 959-73.) With respect to this claim, Petitioner has not come close to proving "(1) counsel rendered constitutionally deficient performance, and (2) there is a reasonable probability that but for counsel's deficient performance, the petitioner would have pled guilty." *Humphress v. United States*, 398 F.3d 855, 859 (6th Cir. 2005).

For the above reasons, the Court finds Petitioner has not met his burden to show both deficient performance and prejudice under the *Strickland* test with respect to any of his claims of ineffective assistance of trial counsel.

### C. Claims of Ineffectiveness of Appellate Counsel

To prove ineffective assistance of appellate counsel, Petitioner must show deficient performance and prejudice under *Strickland*. Notably, appellate "counsel has no obligation to raise every possible claim, and the decision of which among the possible claims to pursue [on appeal] is ordinarily entrusted to counsel's professional judgment," and "[c]ounsel's performance is strongly presumed to be effective." *McFarland v. Yukins*, 356 F.3d 688, 710 (6th Cir. 2004) (citations omitted). "[O]nly when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of [appellate] counsel be overcome." *Joshua v. DeWitt*, 341 F.3d 430, 441 (6th Cir. 2003) (quoting *Monzo v. Edwards,* 281 F.3d 568, 579 (6th Cir. 2002)). More specifically, the "process of winnowing out weaker arguments on

14

appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quotation marks omitted); *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983) ("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues.").

Appellate counsel in this case litigated four challenges to Petitioner's convictions and sentence. Petitioner has not demonstrated that the issues addressed herein are "clearly stronger than issues that counsel did present," nor can he make such a showing, because, as discussed above, the claims set forth in his § 2255 motion lack merit. As Petitioner focuses most of his reply on suppression issues addressed herein, the Court specifically notes that, although the premise from *Kimmelman* stems from an ineffective assistance of trial counsel claim, where a Fourth Amendment claim as to trial counsel fails, ineffective assistance of appellate counsel claims based on the same grounds must fail as well. *See Henness v. Bagley*, 644 F.3d 308, 319 (6th Cir. 2011). Having found all of Petitioner's § 2255 claims regarding trial counsel to be groundless, "there can be no constitutional deficiency in appellate counsel's failure to raise meritless issues." *Mapes v. Coyle*, 171 F.3d 408, 413 (6th Cir. 1999). For these reasons, the Court finds no ineffective assistance on the part of appellate counsel.

### D. *Alleyne* Claims

Citing *Alleyne v. United States*, 133 S. Ct. 2151 (2013), Petitioner asserts his Sixth Amendment rights were violated by an enhanced statutory mandatory minimum sentence applied

15

Case 1:06-cr-00069-TRM-SKL   Document 410   Filed 06/10/16   Page 15 of 17   PageID #: 1469

to him as the result of his prior felony drug conviction because this Court, rather than the jury, determined the existence of a prior conviction.[9]

As argued by the government, Petitioner's quest for relief under *Alleyne* is fruitless. In *Alleyne*, the Supreme Court held "[f]acts that increase the mandatory minimum sentence are . . . elements and must be submitted to the jury and found beyond a reasonable doubt." *Id.* at 2158. However, *Alleyne* does not apply retroactively to cases on collateral review. *In re Mazzio*, 756 F.3d 487, 488 (6th Cir. 2014). Moreover, the Supreme Court explicitly iterated in *Alleyne* that "the fact of a prior conviction" is an appropriate subject for judicial fact-finding at sentencing. *Alleyne*, 133 S. Ct. at 2160 n.1 (referencing *Almendarez-Torres v. United States*, 523 U.S. 224 (1998)). Consequently, *Alleyne* does not provide any basis for granting relief to Petitioner.

### E. Certificate of Appealability

To obtain a certificate of appealability, Petitioner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, Petitioner is required to show that reasonable jurists could conclude that the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *See Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000); *see also Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003) (holding a petitioner must show that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.") (citation omitted). Where the district court denies an issue on procedural grounds without evaluating the merits of the underlying constitutional claim, courts should grant a certificate of appealability only if two requirements are satisfied: (1) the court must determine that reasonable jurists would find the district court's procedural assessment debatable or wrong

---

[9] Petitioner does not contend that he was not previously convicted of a felony drug offense.

as stated above; and, (2) the court must determine that reasonable jurists would find it debatable or obvious that the petition states a valid underlying constitutional claim. *See Slack*, 529 U.S. at 484-85. Because Petitioner has failed to make a substantial showing of the denial of a constitutional right, reasonable jurists could not find the assessment of his claims debatable, and the issues presented are not adequate to deserve encouragement to proceed further, a certificate of appealability **SHALL NOT ISSUE**.

## IV. CONCLUSION

For the reasons stated above, the claims presented in the 2255 Motion lack merit, Petitioner is not entitled to relief pursuant to 28 U.S.C. § 2255, and a hearing is unnecessary in this case. Accordingly, judgment shall be entered **DENYING** Petitioner's 2255 Motion (Doc. 379).

A separate judgment will enter.

*/s/ Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**